IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MATTHEW D. CUYLER, : | |
| : | |
| Plaintiff, : | CIVIL ACTION FILE NO. |
| : | 1:14-CV-1287-RWS-AJB |
| v. : | |
| : | |
| THE KROGER CO., : | |
| : | |
| Defendant. : | |

**UNITED STATES MAGISTRATE JUDGE'S FOURTH
<u>NON-FINAL REPORT AND RECOMMENDATION</u>**

A hearing was held on Friday, January 22, 2016 on Defendant's Motion for Sanctions. [Doc. 76]. Defendant appeared at the hearing through counsel; however Plaintiff failed to appear, despite having acknowledged receipt of the Court's Order rescheduling the hearing. [*See* Doc. 106; Doc. 117 (hereinafter "T_") at 3]. The Court directed Kroger to submit an affidavit setting forth the attorneys' fees and expenses incurred in connection with Plaintiff's unfounded claims of judicial bias and the baseless claims that Kroger and its lawyers were guilty of promoting that bias. T5-6, 7. Kroger submitted those materials, [Doc. 112], and Plaintiff responded. [Doc. 120]. For the following reasons, the undersigned **RECOMMENDS** that the motion, [Doc. 76], be **GRANTED IN PART AND DENIED IN PART**.

*Introduction*

Defendant contends that Plaintiff has pursued frivolous claims and has filed "countless" motions and pleadings either accusing the Court or it of fraud, prejudice, or due process violations based on completely groundless accusations without support in law or fact, which conduct warrants imposition of sanctions either under the Court's inherent powers or Rule 11 of the Federal Rules of Civil Procedure. [Doc. 76 at 6]. In his response, in addition to making unsupported allegations about judicial misconduct and treason, Cuyler once again claimed that the undersigned and the District Judge should be recused from this case, and opposed Defendant's request for sanctions on the grounds that Defendant and its lawyers committed misconduct. [Doc. 77, *passim*].

*Applicable Law*

In *Chambers v. NASCO, Inc.*, 501 U.S. 32 (1991), the Supreme Court affirmed an award of attorney's fees as a sanction against a defendant under the court's inherent powers. The Court warned, however, that "because of their very potency, inherent powers must be exercised with restraint and discretion." *Id.* at 44. The "inherent power extends to a full range of litigation abuses," *id.* at 46, and a federal court is not "forbidden to sanction bad-faith conduct by means of the inherent power simply because that conduct could also be sanctioned under the statute or the Rules." *Id.* at 50.

2

Similarly, the Eleventh Circuit recognizes the courts' inherent power to impose sanctions against an attorney or party for bad-faith, vexatious, wanton, or oppressive conduct. *Wachovia Bank v. Tien*, 406 Fed. Appx. 378, 382 (11th Cir. Dec. 22, 2010) (affirming sanctions against *pro se* litigant and citing *Byrne v. Nezhat*, 261 F.3d 1075, 1106 (11th Cir. 2001), and *Rothenberg v. Sec. Mgmt Co.*, 736 F.2d 1470, 1471 (11th Cir. 1984)). The Eleventh Circuit also has held that the "key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998); *In re Mroz*, 65 F.3d 1567, 1575 (11th Cir. 1995). A finding of bad faith is warranted where the individual knowingly or recklessly raises a frivolous argument, argues a claim for the purpose of harassing an opponent, delays or disrupts the litigation, or hampers enforcement of a court order. *Byrne*, 261 F.3d at 1121. The district court must do more than conclude that the individual acted in bad faith. *Id.* at 1123. Rather, it must make specific findings as to the individual's conduct that warranted sanctions. *Id.* The court's inquiry should focus primarily on the individual's conduct and motive, rather than the validity of the case. *Rothenberg*, 736 F.2d at 1472.

Rule 11 sanctions are proper "(1) when a party files a pleading that has no reasonable factual basis; (2) when the party files a pleading that is based on a legal theory that has no reasonable chance of success and that cannot be advanced as a

3

reasonable argument to change existing law; and (3) when the party files a pleading in bad faith for an improper purpose." *Jones v. Int'l Riding Helmets, Ltd.*, 49 F.3d 692, 694 (11th Cir. 1995). Courts within the Eleventh Circuit must conduct "a two-step inquiry as to (1) whether the party's claims are objectively frivolous; and (2) whether the person who signed the pleadings should have been aware they were frivolous." *Id.* "Rule 11 sanctions are warranted when a party files a pleading that (1) has no reasonable factual basis; (2) is based on legal theory that has no reasonable chance of success and that cannot be advanced as a reasonable argument to change existing law; and (3) is filed in bad faith or for an improper purpose." *Id.*

A party accused of sanctionable conduct is entitled to fair notice of the conduct which may warrant sanctions along with supporting reasons (such notice may come from the party seeking sanctions, the court, or both), and an opportunity to respond, orally or in writing, to the invocation of sanctions and to justify his or her actions. *Mroz*, 65 F.3d at 1575-76.

Under Rule 11, sanctions may include (1) nonmonetary directives; (2) an order to pay a penalty into court; or (3) "if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation."

4

Fed. R. Civ. P. 11(c)(4). Yet, sanctions must be limited to what "suffices to deter repetition of the conduct or comparable conduct by others similarly situated." *Id.*

Furthermore, in determining sanctions, the Court must consider the sanctioned party's ability to pay. *Baker v. Alderman*, 158 F.3d 516, 529 (11th Cir. 1998). The conduct and resources of the party to be sanctioned are relevant to the determination of the amount of sanctions to be imposed. The Court should also inquire as to the extent to which the nonviolating party's expenses could have been avoided, or mitigated, and reduce or increase the award accordingly. *Id.* at 528 (footnotes omitted). Sanctions under the Court's inherent power similarly "must take into consideration the financial circumstances of the party being sanctioned." *Martin v. Automobili Lamborghini Exclusive, Inc.*, 307 F.3d 1332, 1337 (11th Cir. 2002).

### *Discussion*

While the subject matter of Plaintiff's lawsuit, which at the present time appears to have partially survived summary judgment based on the Court's analysis, is not frivolous or subject to sanctioning, the Court previously warned Plaintiff that continuing to file frivolous and legally and factually baseless pleadings could result in the imposition of bad faith sanctions. [Doc. 78 at 22]. In a July 6, 2015 Order and Report & Recommendation ("R&R), [*id.*], the Court gave Plaintiff fourteen days to

5

reconsider his allegations in his objections, [Doc. 74], to the Court's April 22, 2015 Order. [Doc. 73]. Instead of withdrawing those portions of his objections which were frivolous, including assertions that the undersigned be removed from the case for bias and prejudice, that the undersigned had no jurisdiction, and that the undersigned committed treason and criminal acts including obstruction of justice, [*see* Doc. 74 *passim*], Plaintiff essentially repeated his earlier unsupported and wholly frivolous claims against the Court, including alleging that the Court committed fraud, treason, and violated Plaintiff's civil rights, and violated the judicial oath of office. [Doc. 81 at 3]. Plaintiff followed up with a complaint to the Chief District and Magistrate Judges against the undersigned and the District Judge, [Doc. 82 at 3], construing the Court's admonition to Plaintiff to reconsider his groundless allegations as a threat. [*Id.* at 2]. He thereafter accused the District Judge of fraud and treason in a filing on July 21, 2015, [Doc. 84].

Such repeated baseless allegations renders him subject to sanctions. *Spolter v. Suntrust Bank*, 403 Fed. Appx. 387, 390 (11th Cir. Nov. 16, 2010) (affirming imposition of monetary sanctions for repeated motions for recusal based on unsupported allegations of bias); *Rhodes v. MacDonald*, 670 F. Supp. 2d 1363, 1379 (M.D. Ga. 2009) (holding lawyer in contempt for repeated frivolous and bad faith

6

filings, stating that "accusing a judge of treason and suggesting that the federal courts are under the thumb of the Executive Branch for no reason other than the judge ruled against you may be protected by the First Amendment when made outside of court proceedings, but it has no place in a legal motion for reconsideration"), *aff'd*, 368 Fed. Appx. 949 (11th Cir. Mar. 15, 2010); *see also In re Mann*, 229 F.3d 657, 659 (7th Cir.2000) ( "Litigants are understandably disappointed when they do not prevail in court, but that does not give them the license to attack the integrity of the judiciary.").

Plaintiff has the absolute right to object to any of the undersigned's orders and R&Rs, setting forth facts and legal arguments why the order or R&R is incorrect in fact or in law. What Plaintiff is not entitled to do is to object on the grounds of wholly unsupported and baseless allegations of bias, prejudice and criminality. He was previously advised that claims of judicial bias warranting recusal may not be based solely on adverse court rulings with which Plaintiff disagrees. [Doc. 73 at 3-4]; *Liteky v. United States*, 510 U.S. 540, 554, 555 (1994) ("[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are proper grounds for appeal, not for recusal."); *In re Horne*, No. 14-12047, 2015 WL 6500754, at *4 n.6 (11th Cir. Oct. 28, 2015) ("[W]e readily reject Plaintiff's argument that the bankruptcy judge's adverse rulings warrant recusal."). Moreover,

7

"opinions formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555. Plaintiff's allegations contain no such factual showing and yet he keeps asserting them.

Plaintiff's claims that the undersigned and the District Judge are biased, have committed treason and should recuse, are without any factual basis whatsoever and far exceed the allowable limits to objecting to adverse rulings. His repeating of these baseless claims despite having been warned of the consequences constitutes demonstrates that he is motivated by bad faith and, thus, his actions are sanctionable.

In its post-hearing submission, Kroger contends that its lawyers spent 33.9 hours at the billed rate of $320 per hour, or a total of $10,848, in defending against Plaintiff's papers filed in bad faith. [Doc. 112-1 at 2]. After a review of Defendant's submissions, as indicated in the following text, the Court recommends that a much lesser amount be assessed against Plaintiff.

First, although Plaintiff has filed numerous baseless papers in this case that are replete with wholly unsubstantiated and vitriolic statements, the Court examines only Plaintiff's filings after April 22, 2015. On that date, the Court issued an order denying

8

Plaintiff's motion for recusal and disqualification. [Doc. 73]. In the R&R dated July 6, 2015, wherein the Court recommended that Defendant's first sanction motion, [Doc. 68], be denied, the Court gave Plaintiff 14 days to reexamine his objections to that April 22 order, advising Plaintiff that if frivolous and baseless arguments were not redacted, then the Court would look at those objections in recommending resolution of Defendant's pending (second) motion for sanctions. [Doc. 78 at 22]. The District Judge ultimately adopted the undersigned's R&R and denied Defendant's motion for sanctions. [Doc. 86]. The Court views the District Judge's denial of Defendant's motion for sanctions as, in effect, excluding the attorneys' fees incurred in relation to the first sanction motion from any subsequent fee award. Thus, the Court does not include any fees incurred prior to the April 22, 2015 admonition to Plaintiff.

Turning now to Plaintiff's bad faith filings, instead of viewing the Court's April 22 admonition as effectively a safe harbor and as a way to avoid the imposition of sanctions, in his filing on July 15, 2015, Plaintiff construed the Court's admonition as a threat, which it was not, [Doc. 81], and proceeded to repeat the same baseless and bad faith claims against the District Judge and the undersigned. [*See* Doc. 81, *passim*; Doc. 82]. On the other hand, his most recent filing, his response to Defendant's post-hearing filing, omitted his previous vituperative claims against the judges in this action,

9

although he repeated his unfounded and unsupported claims that Defendant and/or its lawyers should be sanctioned. [Doc. 120, *passim*].[1]

However, Defendant did not list either preparing for the hearing, its lawyer's attendance at the hearing, or the time it took to prepare the post-hearing submission in its post-hearing submission. Consistent with the Court's July 5, 2015 Order and R&R, the Court shall look at Plaintiff's filings after the filing of Defendant's first motion for sanctions on February 10, 2015, to determine whether his filings are sanctionable. The Court finds that Kroger has proven by clear and convincing evidence that some of Plaintiff's post-February 10, 2015 filings are in bad faith and sanctionable. He persisted in his bad faith filings (1) on April 30, 2015, [Doc. 74 at 2 (stating that the undersigned's "decision to continue to render Orders in this case is a criminal act" and "Alan J. Baverman committed Treason"); *see also id.* at 3-5]; (2) on May 21, 2015 [Doc. 77 at 1-3 (accusing the undersigned of bias and prejudice, criminal acts and treason)]; and (3) on July 15, 2015 [Doc. 81 at 2 (accusing undersigned *inter alia* of treason)]. However, the Court concludes that Plaintiff's filings after February 10 but

---

[1] Plaintiff makes no statement as to why he failed to appear on January 22, 2016.

10

before April 30, 2015, [Docs. 71, 72], did not contain the same sort of baseless allegations that are contained in his filings after April 30.

Thus, Defendant is entitled to sanctions for any efforts incurred in responding to Plaintiff's filings after April 30, 2015. However, the only entry in Defendant's affidavit that relate to responding to these bad faith filings is for May 14, 2015. [Doc. 112-1 at 6]. As noted, Defendant did not claim an entitlement to be reimbursed for preparing for the hearing, appearing at the hearing or filing the post-hearing submissions. Although the Court was inclined to consider awarding fees for these actions, Defendant did not request them.

Therefore, Defendant's affidavit reflects 2.50 hours (or $800.00) on May 15, 2015 in attorney time to respond to Plaintiff's post-April 22, 2015 bad faith filings. [Doc. 112-1 at 6].[2] It is clear that Kroger expended much more attorney time and

---

[2]   Defendant's post-hearing submission includes a "Chart of Attorney Time" that does not correlate to a particular attorney, nor does it identify a particular task performed by a lawyer. It lists five dates: 6/11/2014, 11/11/2014, 2/13/2015, 3/10/2015, and 6/12/2015. It appears to set out 30.3 hours of attorney time. [*See* Doc. 112-1 at 4].

Under the chart is an itemized listing of 25 attorney tasks that were performed, providing the date, identifying the attorney performing the task, describing the task, tallying the time the task took to complete, and figuring the attorney fee earned for the task(s) at the rate of $360 per hour. None of the dates so listed correlates to the dates set out in the chart. The total attorney time for the itemized list also totals

11

expense in responding to Plaintiff's obstreperous filings in this case, but this time is the only item consistent with the Court's prior order and the Court's analysis as discussed above.

The Court also has considered whether Plaintiff has the ability to pay $800. Plaintiff did not attend the January 22, 2016 hearing, [Doc. 117], and even though the Court ordered the hearing transcribed and a copy of the transcript sent to him, Plaintiff did not advise the Court in his latest filing about his current financial ability (*see* T7-8), nor otherwise challenge the particulars of Defendant's affidavit. Further, Defendant has disclosed to the Court Plaintiff's annual salary, since Plaintiff is employed with Defendant. [Doc. 112-2 at 1]. The Court has no information as to any reasonable expenses or debts that Plaintiff has, and therefore, based on the record evidence, Plaintiff's salary is more than adequate to allow Plaintiff to pay the sanctions recommended by the Court.

The Court has, perhaps too generously, given Plaintiff the benefit of the doubt in this matter. Plaintiff is advised, however, that the Court's reduction in Defendant's

---

30.3 hours. [*Id.* at 5-6].

Since the Chart of Attorney Time does not identify the tasks performed nor the lawyer performing any of them, the Court bases its analysis on the itemized listing following the chart.

12

attorneys' fee request in no way excuses Plaintiff's conduct in this case.  Further bad faith filings may result in the more drastic sanction of recommending to the District Judge that Plaintiff's action be dismissed.

*Conclusion*

For the reasons set forth above, the Court **RECOMMENDS** that Defendant's motion for sanctions, [Doc. 76], be **GRANTED IN PART AND DENIED IN PART**, specifically that Plaintiff be ordered to pay Defendant $800 to reimburse Defendant for attorney fees incurred as a result of Plaintiff's sanctionable filings.  The Court further **RECOMMENDS** that if the District Judge adopts this recommendation, that Plaintiff be ordered to pay Defendant any sums so ordered within fourteen days of the adoption by the District Judge of this R&R.[3]

---

[3] The Court must decide whether it has the authority to issue an order sanctioning Plaintiff, or whether it must proceed by way of a Report and Recommendation.  The Court concludes that it may only issue a Report and Recommendation.  It is true that the Eleventh Circuit, in an unpublished decision, has described a magistrate judge's order imposing sanctions for spoliation as non-dispositive, *Hopkins v. JPMorgan Chase Bank, NA*, 618 Fed. Appx. 959, 961-62 (11th Cir. July 1, 2015).  Also, Federal Rule of Civil Procedure 72(a) authorizes magistrate judges to issue orders on any type of "pretrial matter not dispositive of a party's claim or defense."  Additionally, several courts have held that sanctioning litigants for bad faith tactics which do not dispose of a claim or defense are non-dispositive and may be rendered by a magistrate judge by order.  *In Matter of Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 513 n.1 (S.D. Fla. 2015); *Bates v. United States*, No. CV 2:13-00051-KD-C, 2015 WL 4999740, at *1-2 n.1

(S.D. Ala. Aug. 21, 2015). However, these cases are primarily grounded in abuses of civil discovery, matters that are easily viewed within a magistrate judge's power, and thus are distinguishable from the present matter, which involves repeated filings that amount to bad faith. *But see Maisonville v. F2 America, Inc.*, 902 F.2d 746, 748 (9th Cir. 1990) (holding that magistrate judges have jurisdiction to order non-dispositive Rule 11 sanctions); *see also Avendano v. Sec. Consultants Grp.*, 302 F.R.D. 588, 592 (D. Nev. 2014) (same).

Thus, the Court is persuaded by decisions of the Sixth and Seventh Circuits, who have held that decisions on Rule 11 motions are dispositive of a claim and are therefore not properly resolved by order of a magistrate judge. The Sixth Circuit reasoned that "[n]othing in the [Federal Magistrates] Act expressly vests magistrate judges with jurisdiction to enter orders imposing Rule 11 sanctions" and "Rule 72(a) authorizes a magistrate judge to enter an order only as to a 'pretrial matter . . .' that is not dispositive of a 'claim or defense of a party.'" *Bennett v. General Caster Service of N. Gordon Co.*, 976 F.2d 995, 998 (6th Cir. 1992). Observing that the "magistrate judge's purported order entered pursuant to appellees' Rule 11 motion resulted in an award of money damages," the Sixth Circuit concluded that "[n]othing remained but to execute the judgment; therefore, this purported order was dispositive of the Rule 11 matter and, consequently, dispositive of a 'claim.'" *Id.* As such, the *Bennett* court concluded, a Rule 11 motion cannot be resolved by an order of a magistrate judge; rather, "[a] magistrate judge should . . . issue a report and recommendation for *de novo* review by the district court." *Id.* In further support of this conclusion, the Sixth Circuit noted that "Congress specifically withheld from magistrate judges jurisdiction over contempt proceedings [which] are closely analogous to Rule 11 sanctions." *Id.* at 998 n.7.

Similarly, the Seventh Circuit in *Alpern v. Lieb*, 38 F.3d 933, 936 (7th Cir. 1994), held that, upon the referral of a Rule 11 motion for sanctions, a "magistrate judge lacked authority to do anything other than make a recommendation." Recognizing that "an award under Rule 11 is conceptually distinct from a decision on the merits," the court nonetheless found them similar insofar as an award under Rule 11 "requires one party to pay money to another" and "the denial of a request for sanctions has an effect similar to the denial of a request for damages." *Id.* at 935. It also found support for

14

**IT IS SO RECOMMENDED**, this the 9th day of February, 2016.

_____
ALAN J. BAVERMAN
UNITED STATES MAGISTRATE JUDGE

---

its analogy in the fact that "[a]wards of sanctions . . . are treated as separate claims for purposes of appellate jurisdiction." *Id.* On that basis, the Seventh Circuit concluded that "[t]he power to award sanctions, like the power to award damages, belongs in the hands of the district judge." *Id.*; *see also Retired Chicago Police Ass'n v. City of Chicago*, 76 F.3d 856, 869 (7th Cir. 1996) ("The fact that an attorney was the subject of a sanctions request does not change the fact that resolution of a sanctions request is a dispositive matter capable of being referred to a magistrate judge only under § 636(b)(1)(B) or § 636(b)(3), where the district judge must review the magistrate judge's report and recommendations *de novo*.").

While the Court recognizes that these two appellate decisions were issued before Congress expanded magistrate judge contempt authority, *see* Federal Courts Improvement Act of 2000, Pub.L. No. 106-518, 114 Stat. 2410, Congress's failure to address magistrate judge authority to issue sanctions is just as likely a harbinger of congressional intent. Therefore, the undersigned recommends a resolution of the motion.

15

AO 72A
(Rev.8/82)